RONEY v. LANE COUNTY. [81 Or.

Argued July 19, affirmed August 1, 1916.

## RONEY *v.* LANE COUNTY.

(159 Pac. 73.)

**Counties—Taxation—Disposition of General Taxes—Statute.**

1. Under Sections 937, 6278, L. O. L., giving County Courts authority over county roads and power to tax for general county purposes, the moneys so raised may be used upon county roads, for Sections 6320, 6321, authorizing special tax levies for "building and improving" county roads is not an exclusive, but merely a supplementary, method of raising road funds.

**Municipal Corporations—Taxation—Charter Provisions—Construction.**

2. Eugene City Charter, Sections 114, 115, exempting the city from road taxes levied by the County Court, refers only to road taxes levied under Sections 6320, 6321, L. O. L., and is inapplicable to general taxes raised under Sections 937, 6278, although they are used for road purposes.

**Counties—Taxation—Disposition of General Taxes—Statute.**

3. Budget Law (Laws 1913, p. 458), requiring the County Court to publish an estimate of the amount required for each department of the county government, merely requires an estimate of how much of the general tax fund, as distinguished from the special road tax fund, will be used for road purposes.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2. Statement by MR. JUSTICE BURNETT.

This is a suit by L. N. Roney against the county of Lane, H. L. Bown, county judge, George M. Hawley and M. H. Harlow, county commissioners, and James C. Parker, sheriff of Lane County, Oregon.

The plaintiff is a taxpayer owning taxable real and personal property located in the City of Eugene, in Lane County, Oregon. He brings this suit in his own behalf and that of all other taxpayers similarly circumstanced. That city is a municipal corporation chartered by an act of the legislative assembly of the State of Oregon entitled "An act to reincorporate the City of Eugene and to repeal all acts and parts of acts in conflict therewith," filed in the office of the Secretary

of State February 18, 1905. Sections 114 and 115 of that charter are here set down:

"The corporate limits of the City of Eugene shall embrace and the same is hereby constituted an independent road district and the power and authority given by the general laws of the State of Oregon to the County Court of Lane County, to divide said county into road districts, to appoint road supervisors, to lay out and work highways, and to levy a tax upon all taxable property of said county to be used in building and improving the county roads shall not apply or extend to the territory within the limits of the City of Eugene, but the said territory and the inhabitants thereof are hereby excepted out of the jurisdiction of said court upon said subjects; and the authority given to the County Court by general law to manage, control, and levy road poll taxes, in cash, shall be exercised within the City of Eugene by the common council thereof; and all road taxes, including road poll taxes levied upon or against the property and persons of the city of Eugene, shall be expended by the street commissioner thereof under the direction of the common council of said city, and authority is hereby given to the common council to expend such portion of the road taxes outside of the limits of the city upon the roads leading to the city as a majority of the common council shall deem expedient and advisable": Section 114.

"Authority is hereby given to the common council to levy such tax, not exceeding two mills in any one year, as it shall deem necessary, upon all taxable property in the city, to be collected at the same time and in the same manner as the other taxes of the city: Provided, that such part thereof as the council or street commissioner shall direct may be paid in labor on the streets and roads, under the direction of the street commissioner, who shall have all the power and authority of a road supervisor under the general laws of the state": Section 115.

The plaintiff avers that in the budget framed by the Lane County Court on December 2, 1915, under the

head of "roads," there was inserted the sum of $110,620 to be levied upon all the taxable property in that county including that within the City of Eugene. This was incorporated with the larger amount of $320,683.50, which is denominated in the budget "general fund"; the rate levied to raise which was 8.676 mills. He avers that the part apportioned for roads amounts to 2.79 mills. He charges that this tax was extended on the assessment-rolls and that the sheriff of the county will collect the same from the plaintiff. He prays for a cancellation of the extension, that the levy of 2.79 mills be set aside and held for naught, and that the sheriff be enjoined and restrained from collecting the same. A general demurrer to this complaint was sustained, and the suit dismissed. The plaintiff appealed.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Foster & Hamilton* and *Mr. Sjur P. Ness,* with oral arguments by *Mr. O. H. Foster* and *Mr. Ness.*

For respondents there was a brief over the names of *Mr. Joseph M. Devers,* District Attorney, and *Messrs. Thompson & Hardy,* with oral arguments by *Mr. Devers* and *Mr. Helmus W. Thompson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

Section 6320, L. O. L., as amended by the act of February 23, 1915, reads thus:

"The County Court or Commissioners' Court of each county in the state may levy a tax of not to exceed ten mills on the dollar on all taxable property of said county, at the time of making the annual tax levy upon the previous year's assessment, which shall be set apart as a general road fund, to be used in the build-

ing and improving the public or county roads or bridges on county roads of the county in which the property is located. Said tax shall be paid in money, and collected in the same manner as other county taxes are collected, and when so collected shall be used for road purposes only, as provided in this act, and 70 per cent thereof shall be apportioned to the several road districts, including districts composed of incorporated cities and towns, in such proportion as the amount of taxable property in each district shall bear to the whole amount of taxable property in the county, and the remaining 30 per cent shall be applied to roads in such locality in the county as the court may direct": Laws 1915, p. 133.

Section 6321, L. O. L., provides for an additional tax to be voted by the taxpayers of a road district for the improvement of roads therein. Section 6278 here follows:

"All county roads shall be under the supervision of the County Court of the county wherein the said road is located; and no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in the state, except by the authority of the County Court of the proper county; and each County Court within this state shall have the authority, and it shall be its duty, to supervise, control, and direct the working, laying out, opening, and keeping in repair of all county roads within its county, and to prescribe the methods and manner of working the same; to supervise the construction and repair of all bridges on the county roads, and to remove any supervisors for incompetency or disobedience to the orders of said court. The powers herein given may be exercised directly by the court, or through some one of its members designated for that purpose."

In addition to the authority conferred by Section 6278, L. O. L., we find in Section 937 that the County Court has powers pertaining to county commissioners to transact county business, among other things:

"(3) To establish, vacate, or alter county roads or highways within the county, or any other necessary act relating thereto, in the manner provided by law; (4) to provide for the erection and repairing, within the county, of public bridges upon any road or highway established by public authority; * * (7) to estimate and determine the amount of revenue to be raised for county purposes, and to levy the rate necessary therefor, together with the rate required by law for any other purpose, and cause the same to be placed in the hands of the proper officer for collection; * * (9) to have the general care and management of the county property, funds, and business, where the law does not otherwise expressly provide. * * "

1, 2. The principal question to be determined is whether the County Court in the exercise of its authority defined in these sections is restricted for necessary funds to the special tax provided for in Section 6320 revised in 1915. It will be observed that the money to be raised under that section is to be used exclusively for "building and improving" the public or county roads or bridges on such roads. In *Kime* v. *Thompson,* 60 Or. 183 (118 Pac. 174), we held that it was not mandatory upon the County Court to exercise the authority conferred by this section; that it was merely cumulative in the matter of taxation; and that the County Court was not confined to the levy of this special tax in the furtherance of its effort to improve the highway, nor deprived of the power of applying other means to such a purpose. The general authority conferred upon the County Court by Sections 937 and 6278, and the objects of its control, include many things besides the mere building and improving of thoroughfares. In Section 6320 nothing is said about the expense of surveying or laying out roads, paying damages for property taken, or for salaries of road officers, and many other things which would naturally suggest themselves upon

detailed examination of legitimate expenses connected with the general road system of a county.

The statutory grant of authority by the legislative department of the state as above described is ample sanction for the County Court to apply to the opera- tion of its road system money drawn from the general resources of the county independent of or in addition to the restricted levy provided for in Sections 6320 and 6321. As held in *Kime* v. *Thompson,* 60 Or. 183 (118 Pac. 174), the fund authorized in these latter sections is cumulative and permissive. Specific and exclusive road taxes were those from which the charter of Eugene originally exempted that municipality. They are the only funds to which the restricted designation of "road taxes" used in the city's incorporating act is applicable. All others are referable to the ordinary dominion of the county over its municipal affairs, as a branch of the government vested with the taxing power. It would cripple the general authority of the County Court if it were required to depend exclusively upon a special fund applicable alone to the mere building and improving of public roads. The special tax described in Section 6320 must perforce be apportioned among all the districts throughout the county including cities and towns in the classification therein described. The districts get 70 per cent whether needed or not. The county has only 30 per cent and is restricted in its disbursement to mere building and improvement. None of that money is applicable to any other of the numerous expenses necessarily incident to road matters. The thickly populated centers would have money to waste while the outlying highways would become impassable for want of means to repair them and new roads would be out of the question. It is not reasonable to construe Sec-

tion 6320 so as to make it a hobble instead of a help to the county in its progress toward good roads. It was evidently intended to supplement the general resources of the county and was not designed to contract them. The conclusion that the county may finance its road system with money raised by general taxation and is not compelled to resort to the additional scheme authorized by Sections 6320 and 6321 renders it unnecessary to determine whether the charter provisions already quoted are superseded by the general law embodied in the latest form of Section 6320 contemplating distribution of money among cities and towns which happen to be separate road districts as well as among rural districts.

3. The question is not affected by Chapter 234 of the Laws of 1913, known as the ''Budget Law,'' which requires the County Court to publish beforehand an estimate fully itemized showing under separate heads the amount required for each department of the county government, among other things, for the improvement and maintenance of public highways, roads, streets, bridges, the construction, operation, and maintenance of each public utility, etc. Having reached the conclusion in *Kime* v. *Thompson,* 60 Or. 183 (118 Pac. 174), that the County Court has the right to use the general fund for road purposes it is plain that the budget law merely requires an estimate of how much of that general fund, as distinguished from the special fund named in Section 6320, will be expended for that purpose. In short, the general fund is derivable from taxation upon all taxable property within the county wherever situated. It may be applied to the operation of the road system of the county. The portion thus used is not technically a road tax, which term may be

applied in strictness only to the levy authorized by Sections 6320 and 6321.

The demurrer to the bill was properly sustained and the decree is affirmed.                          AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE BENSON concur.

MR. JUSTICE HARRIS and MR. JUSTICE EAKIN took no part in the consideration of this case.